STATE OF NEBRASKA, APPELLEE, V. WILLIAM J. WELSH III, APPELLANT.

275 N. W. 2d 54

Filed January 30, 1979. No. 42041.

Patrick W. Healey and Healey, Healey, Brown & Wieland, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH,

McCown, Clinton, Brodkey, and White, JJ., and Blue, District Judge.

White, J.

This is an appeal from a jury verdict of manslaughter. The defendant was charged and tried on one count of first degree murder of his wife, Christine C. Welsh, on June 1, 1977. Defendant assigns as error that the sentence was excessive and he should have been placed on probation. The trial court sentenced the defendant to a term of 10 years in the Nebraska Penal and Correctional Complex. In effect, the sentence was for a term of from 1 to 10 years.

The defendant at the time of the homicide was a Lincoln police officer and a Vietnam war veteran with numerous commendations and citations. The victim was a dispatcher in the Sheriff's Department of Lancaster County, Nebraska. For some time prior to the victim's death, the parties had marital difficulties. Divorce was contemplated, discussed, and mentioned to other parties. When the defendant arrived at his home on June 1, 1977, he confronted his wife with his suspicions of her interest in another man and, according to the defendant, the victim stated, immediately prior to the incident, that she was having an affair with another member of the Lancaster County Sheriff's Department. The evidence discloses that the victim died of multiple gunshot wounds from the defendant's privately owned pistol, which he was in the habit of carrying with him while he was off duty.

The punishment for the offense created by statute is left to the discretion of the court to be exercised within certain prescribed limits. The guiding principle in this court is that a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion. See State v. Atwater, 193 Neb. 669, 228 N. W. 2d 876.

During the course of the sentencing proceeding, the trial court expressed the opinion that the defendant had been given "an enormous break" by the jury when it returned a verdict of manslaughter instead of first degree murder. From that statement, the defendant concludes that the decision on sentencing was influenced by a disregard for the findings of the jury. We do not agree that the statement supports such a conclusion. The judge went on to say that: "* * * my sole reason in imposing imprisonment in this case, is because * * *, I think that a lesser sentence would serve to depreciate from the seriousness of the offense and hold the law in disrespect." The statement complained of, standing alone, does not indicate an abuse of discretion.

A related argument concerns section 29-2260 (3), R. R. S. 1943. That section lists 11 factors to be accorded weight in favor of probation. The defendant alleges that the trial court failed to consider those factors and thus abused its discretion. First, it should be noted that, according to that same section, those 11 factors serve as guidelines and do not control the discretion of the court. Second, although the judge did not specifically comment on each of the 11 factors, there is strong indication that they were indeed considered in his deliberations. He acknowledged that there was little likelihood that the defendant would ever again commit such a crime. He also acknowledged the favorable background and abilities of the defendant. However, those considerations were not enough to outweigh his opinion that a lesser sentence in this case would serve to "depreciate the seriousness of the offender's crime or promote disrespect for law" within the meaning of section 29-2260 (2), R. R. S. 1943. That being the case, he was required to reject the request for probation. Again, we are unable to find that his decision constituted an abuse of discretion.

Because of the unfortunate possibility that a former police officer might suffer physical abuse at the hands of fellow inmates at the penal complex in his own state, the trial court recommended that the defendant be transferred to serve his sentence in another jurisdiction. Defendant contends this would not protect him from such abuse since the inmates of the foreign institution are likely to discover his former occupation. The bottom line in such an argument amounts to a plea for special treatment because of the defendant's former status as a police officer. That plea must be rejected, for it would create the appearance of a privileged class and thus breed the disrespect for law sought to be avoided by section 29-2260 (2), R. R. S. 1943. Although the case of State v. Savin, 195 Neb. 501, 238 N. W. 2d 911, was different in many respects from the case at bar, what was said there is not inapplicable: "The equal protection argument is based on the theory the defendant was dealt with more harshly because he was a lawyer. The fact the defendant was a lawyer and callously abused the trust that had been placed in him justified a greater sentence than might have been imposed upon a person not occupying the professional status of the defendant. We find no merit in the contention the trial court should have disregarded the defendant's status and treated him as a person not schooled in the law and sworn to uphold it." The defendant here is a police officer sworn to uphold the law and to protect the public. The trial court is not in error in taking into account during sentencing his status and responsibilities and the profession previously engaged in by the defendant.

Finally, defendant asserts that it is our duty to compare the sentence imposed in this case with the sentence imposed in each and every other manslaughter case for the purpose of assuring that it is no greater than those other sentences. He cites L. B. 711, Laws 1978, now found at sections 29-2521.01 to

29-2522, R. S. Supp., 1978, as authority for that proposition. It is true that section 29-2521.03, R. S. Supp., 1978, states that this court upon appeal shall "determine the propriety of the sentence in each case involving a criminal homicide by comparing such case with previous cases involving the same or similar circumstances." However, to quote that sentence out of context is to mistake the intention of the Legislature.

A reading of the legislative history of L. B. 711, Laws 1978, and of the bill as a whole indicates conclusively that it was the intention of the introducer and the members of the Legislature to establish a system whereby the imposition of a death penalty in any given case would be compared to the failure to impose the death penalty in any other case in which first degree murder was charged.

The legislative findings which prompted adoption of the bill are found in section 29-2521.01, R. S. Supp., 1978: "(1) Life is the most valuable possession of a human being, and before taking it, the state should apply and follow the most scrupulous standards of fairness and uniformity;

"(2) The death penalty, because of its enormity and finality, should never be imposed arbitrarily nor as a result of local prejudice or public hysteria;

"(3) State law should be applied uniformly throughout the state and since the death penalty is a statewide law and offense which would not result in a death sentence in one portion of the state should not result in death in a different portion; * * *."

At the meeting of the Judiciary Committee held on July 24, 1978, the following exchange took place between Senator Chambers and Senator Stoney: "Senator Stoney: I was just wondering what could be accomplished if most of them (cases wherein the death sentence is imposed) are being appealed and reviewed by the Supreme Court anyway?

"Senator Chambers: But they are not reviewed to

be compared for the propriety of the sentence where the sentence is death. That is the only place where the comparison could occur."

During the floor debates on March 8, 1978, Senator Chambers explained: " ' * * * Once cases have been decided, they become the precedence (sic) on which future cases are decided. Once this study of these cases has been undertaken, it will not be necessary to go through them again and again. The Supreme Court as each case wherein death is imposed, when one of these cases comes before the Supreme Court, it can measure the circumstances of the case where death was imposed against these other cases which have already been studied by the court and a fair and equitable imposition, if such a thing is possible, of the death penalty will occur in this state. * * *.' " Later on April 4, 1978, in floor debates, Senator Chambers said:

" ' * * * It would compare all of the criminal homicides which have occurred and see if some type of uniformity can be arrived at in the imposition of the death penalty * * *.' "

It is clear that the Legislature's purpose in adopting sections 29-2521.01 to 29-2522, R. S. Supp., 1978, was to insure that the death penalty not be imposed in an irrational or inconsistent manner. That purpose would not be served by giving it the construction sought by the appellant and we decline to do so.

Finding no abuse of discretion in the sentence, we affirm.

AFFIRMED.