STATE OF NEBRASKA, APPELLEE, V.
WILLIAM R. BOYER, APPELLANT.

318 N.W.2d 60

Filed April 2, 1982. No. 44325.

Leo J. Eskey of Eskey & Gless, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

A jury found the defendant-appellant, William R. Boyer, guilty of murder in the first degree. The District Court entered judgment on the verdict and sentenced the defendant to life imprisonment.

The defendant asserts the trial court erred in (1) admitting his confession into evidence, claiming it to have been the product of an illegal arrest and not voluntarily made; (2) failing to change venue; (3) failing to grant a mistrial due to the prosecution's failure to produce certain evidence upon motion of

the defendant; and (4) submitting the question of guilt to the jury as the evidence was insufficient. We find the assignments of error to be without merit and affirm.

On July 15, 1980, around 9:30 a.m., the Fremont 911 emergency operator received a call from a male voice which stated his mother had fallen and needed a rescue squad at 2145 North I Street, the residence of both the victim and the defendant in this case. When the rescue squad arrived, they discovered the victim had been shot rather than had fallen. It appeared, because of the presence of broken glass at the front door, as though forcible entry had been made into the home. It was learned a neighbor had seen the victim's son, William, around the house that morning. The neighbor had been alerted by the victim, Donna Boyer, to call Donna at work if William should show up. The neighbor did so. In light of this information, the police issued a broadcast over local radio announcing they were seeking William Boyer for purposes of questioning. Around 1:15 p.m. that same day the defendant voluntarily appeared at the Fremont Police Department. After being put in the captain's office, he was greeted by Detective Tellatin and led to an interview room where he was promptly arrested and read his *Miranda* rights. Defendant answered various questions revealing that he understood each of his rights, knew any statement he made could be used against him, and waived all his rights, including the right to have an attorney present. Immediately following, Boyer confessed to the crime. He consented to having his car searched and told the police the shotgun he used was in the back seat of his car. The car was searched, and a weapon was found.

The evidence reveals the defendant had an argument with his parents the evening prior to the murder and had spent the night sleeping in his car. He was outside that morning when his mother ar-

rived home after receiving a phone call at work. She told him not to go into the house. In spite of her warning, he ran into the house, into his bedroom, and locked the bedroom door behind him. He got a shotgun out of his closet and loaded it. Mrs. Boyer knocked on the door, demanding entrance. The defendant opened the door, at which time the victim told him to pack his suitcase and leave the house. At that time the defendant retrieved the gun from under his bed and shot her.

As part of the defendant's first assignment of error, he contends he was arrested illegally, without probable cause, and as such his confession should be excluded as "fruit of the poisonous tree." The police did not have an arrest warrant at the time of arrest. A warrantless arrest can be made only if there exists reasonable cause to believe a felony has been committed and the person to be arrested is guilty of the offense. *State v. Coleman,* 197 Neb. 186, 247 N.W.2d 627 (1976). Obviously, the discovery of a gunshot victim indicates a felony was committed. In addition to that, the Boyers had two children, a son and a daughter. In light of the fact the 911 call was made by a male voice referring to the victim as his mother, the inference it was the defendant who called was a strong one. After checking with neighbors, the police learned that one of them, a Mary Pollock, had talked to the victim on the morning of her murder. Mrs. Boyer had told her neighbor that her son, the defendant, was not to be around the house, and if he should appear, she, the victim, was to be called at work. The defendant did appear, and the neighbor did call as instructed. The neighbor thought Mrs. Boyer indicated she was coming home. Further, broken glass in the front door indicated forcible entry and points to defendant. Lastly, the 911 caller left the house after making the call. These facts in combination provide adequate probable cause to arrest defendant. There was

no "fruit of the poisonous tree."

As part of the first assignment of error, the defendant also argues his confession was involuntary. To be admissible in evidence, a confession must be freely and voluntarily given. It cannot be induced by promises, or coerced by threats. *State v. Muenchau and Brown,* 209 Neb. 552, 308 N.W.2d 824 (1981). *State v. McDonald,* 195 Neb. 625, 240 N.W.2d 8 (1976). The defendant argues that the shock of his mother's death, his arrest, his previous history of psychiatric problems, and the influence of amphetamines combined to render him unable to make a knowing and voluntary confession. A "totality of the circumstances" test is followed in which factors such as age, mental condition, education, the atmosphere in which the interrogation is conducted, and any other factor which may bear on the question are considered in determining "knowing voluntariness." *State v. Smith,* 203 Neb. 64, 277 N.W.2d 441 (1979); *State v. Stewart,* 197 Neb. 497, 250 N.W.2d 849 (1977). See, also, *Wilson v. Sigler,* 333 F. Supp. 594 (D. Neb. 1971), *aff'd* 449 F.2d 1352 (8th Cir. 1971).

The Supreme Court of the United States has held a person under the influence of drugs may be unable to knowingly and voluntarily make a valid, useful confession. *Mincey v. Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Beecher v. Alabama,* 408 U.S. 234, 92 S. Ct. 2282, 33 L. Ed. 2d 317 (1972); *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). In each of these three cases cited by the defendant, the confessor was under the influence of some type of painkiller to relieve the pain of police gunshot wounds. The drugs were either administered by the police or hospital personnel. Therefore, no doubt existed as to whether the defendant in those cases was actually under the influence of the drug, unlike the situation at bar where the defendant alleges self-ingested amphetamines.

The record reflects that though the defendant appeared somewhat nervous, and at one point appeared as though he were going to cry, he nonetheless maintained good composure under the circumstances. He understood the questions, the questions were not leading, he was in control of his responses, he was not confused, and his answers had a logical nexus to the questions. There is nothing to suggest that the illness he suffered from ingesting insecticide some 3 years earlier affected his answers. The defendant was promised nothing for his confession, nor was he threatened. The record establishes he fully understood his rights.

A finding by the trial court that a statement made by the accused is voluntary will not ordinarily be set aside on appeal unless the finding is clearly erroneous. *State v. Williams,* 205 Neb. 56, 287 N.W.2d 18 (1979). The trial court's decision that the confession was voluntary is amply supported by the evidence.

The defendant next alleges the court erred in failing to grant a change of venue because of extensive local pretrial publicity. In this state, a motion for a change of venue in a criminal case is addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal unless a clear abuse of discretion is shown. *State v. Anderson and Hochstein,* 207 Neb. 51, 296 N.W.2d 440 (1980); *State v. Williams, supra.*

The record clearly establishes that any venireman who indicated a preconceived notion of defendant's guilt because of media coverage such that he or she could not decide the case based solely on the evidence and instructions of the court was excused. Although the court and defense counsel disagreed concerning one venireman's impartiality, she did not serve on the jury. Even if the court were to have erred in overruling a challenge as to her for cause, such error would not warrant reversal in the ab-

sence of a showing that the objectionable juror was forced upon the challenging party and sat on the jury because such party had exhausted his peremptory challenges. *Bufford v. State,* 148 Neb. 38, 26 N.W.2d 383 (1947). The trial court did not abuse its discretion in denying a change of venue.

In the course of trial, the State called to the stand the 911 dispatcher who allegedly received the call from a male voice requesting a rescue squad to the home of the victim. The defense moved to have the testimony, as well as the tape recording of the call, suppressed. The trial court sustained the motion, as the State had failed to produce this evidence as required by the discovery order. The jury had heard that a call by a male voice came on the morning of the murder requesting an ambulance to the victim's home, and included the words, "My mother fell." The appellant claims this evidence came as a surprise and denied him the opportunity of proper preparation. He also claims the jury was prejudiced, although it was instructed to disregard the testimony. See *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), stating that the state's suppression of evidence favorable to and requested by an accused violates due process where the evidence is material, irrespective of the good or bad faith of the prosecution.

The failure of a party to comply with discovery procedures is addressed in Neb. Rev. Stat. § 29-1919 (Reissue 1979), which provides: "If, at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with the provisions of sections 29-1912 to 29-1921 or an order issued pursuant to the provisions of sections 29-1912 to 29-1921, the court may:

"(1) Order such party to permit the discovery or inspection of materials not previously disclosed;

"(2) Grant a continuance;

"(3) Prohibit the party from calling a witness not

disclosed or introducing in evidence the material not disclosed; or

"(4) Enter such other order as it deems just under the circumstances."

The appellant relies primarily upon *State v. Mason,* 408 A.2d 1269 (Me. 1979), which arises under a statutory discovery scheme similar to Nebraska's. In *Mason,* an alleged accomplice to a burglary made an oral statement to the police which was not revealed upon discovery. The trial court nonetheless admitted the statement into evidence. The Supreme Judicial Court of Maine vacated the judgment because the trial court failed to make any determination as to whether the defense's ability to prepare was hampered. After the court pointed out the purpose of the discovery procedure was to " 'make the result of criminal trials depend upon the merits of the case rather than on the demerits of the lawyer performance on one side or the other,' " it held: "Defendant had the right, when confronted at trial for the first time with evidence that the State was duty-bound to disclose before trial, to have the trial Justice exercise his discretion under Rule 16(d). [Maine Rules of Criminal Procedure similar to § 29-1919.] The Court was obligated to consider whether, in the furtherance of justice, an appropriate sanction should be imposed. This he did not do. For this reason we sustain defendant's appeal." *Id.* at 1273.

In order that the State's suppression of evidence be constitutionally violative, the following must exist: (1) Suppression by the prosecution after request by the defense; (2) A favorable character of the evidence to the defense; and (3) Materiality of the evidence. See *Ogden v. Wolff,* 522 F.2d 816, 820 (8th Cir. 1975), citing *Moore v. Illinois,* 408 U.S. 786, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972). *United States v. Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), holds the proper standard of materiality is

constitutionally violated if the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist. *Agurs* found no such error where the prosecutor did not volunteer the victim's prior assault record in a murder trial where self-defense was an issue. *Mason, supra,* does not apply to the case under consideration because here the trial court excluded the evidence, exactly as defendant requested. Under our statute, the defendant could have sought a continuance and further discovery if he felt he needed more preparation or that the evidence might have been helpful. Defendant's claimed lack of ability to prepare is further eroded by the fact that the defense was well aware of the existence of the phone call, as well as some of its general substantive content, at the time of the hearing on a motion to suppress evidence, which was exactly 1 month before the trial.

In *State v. Seger,* 191 Neb. 760, 217 N.W.2d 828 (1974), the defendant was convicted of the offense of having carnal knowledge of a female child under age 15. Shortly after the rape, the girl was given a polygraph examination. The attorney for the defense knew of the polygraph and claimed he was told the girl "passed" the examination. He made no attempt to further view the results or make an investigation of the test or test administrator through discovery procedures. Consequently, he was unaware a written transcript of the test existed. The county attorney testified he informed the defense that a polygraph had been administered and that there was a problem with penetration. After being convicted, the defendant found a written transcript existed and based his motion for new trial upon that "newly discovered evidence." We rejected the defendant's argument, saying: "The newly discovered evidence must be competent, material, credible, and which might have changed the result of trial and which by the exercise of due diligence could not have been

discovered and produced at the trial. Duffey v. State, 124 Neb. 23, 245 N.W. 1 (1932). The evidence in this case shows that defense counsel was notified of the report; that no discovery of the written report was attempted; and that there was no attempt made to subpoena the polygraph examiner prior to trial. It is clear that the polygraph report was not newly discovered evidence and that the defendant could have secured it on request. For this reason alone, the contention of the defendant must be rejected." *Id.* at 763, 217 N.W.2d at 830. As stated in *Ogden v. Wolff, supra,* a companion case to *Seger, supra,* " '[S]uppression' means non-disclosure of evidence that the prosecutor, and not the defense attorney, knew to be in existence." 522 F.2d at 820.

Lastly, defendant assigns as error a lack of evidence to support a first degree murder instruction. He relies on *Whitehead v. State,* 115 Neb. 143, 212 N.W. 35 (1927), wherein Whitehead, in the course of a not so serious argument, struck the victim on the head with a pitchfork. He then immediately rendered and sought aid for the victim. Since premeditation and malice could not be inferred from the facts, we reversed the conviction which was based on a second degree murder instruction. That case has no application to the facts at hand where evidence certainly exists by which the jury could conclude the defendant was lying in wait and therefore planned to kill his mother. The defendant had previously fought with his parents and had once threatened his father. He had locked himself in his room, got the unloaded gun from a closet, loaded the gun, placed it under his bed, unlocked the door for his mother, and then shot her. A jury could properly conclude the defendant acted "purposely and with deliberate and premeditated malice." Neb. Rev. Stat. § 28-303 (Reissue 1979). Where different conclusions may be drawn from the evidence, the court does not commit error in submitting different

degrees under proper instructions for the jury's determination. *State v. Ellis,* 208 Neb. 379, 303 N.W.2d 741 (1981); *State v. Johnson,* 200 Neb. 760, 266 N.W.2d 193 (1978).

The judgment and sentence of the trial court are affirmed.

AFFIRMED.