STATE OF NEBRASKA, APPELLEE, V. PAUL J. ROWE, APPELLANT.

335 N.W.2d 309

Filed June 17, 1983. No. 82-600.

Kirk E. Naylor, Jr., for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

PER CURIAM.

The defendant, Paul J. Rowe, appeals from a jury verdict finding him guilty of murder in the second degree, in violation of Neb. Rev. Stat. § 28-304 (Reissue 1979), on July 21, 1982. Murder in the second degree is a Class 1B felony punishable by imprisonment for a period of not less than 10 years, or life. On July 29, 1982, the court sentenced Rowe to imprisonment for a term of 25 years. This is the second time this case has been before this court. Our first opinion is reported in *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982) (*Rowe I*). In *Rowe I*, we reversed the homicide conviction because of the trial court's failure to instruct the jury on the lesser-included offense of manslaughter and remanded for a new trial. We did, however, affirm the arson conviction and sentence which was imposed by the trial court, and that arson conviction is not involved in this appeal.

Rowe has now assigned two errors. He maintains that the trial court erred in failing to sustain his motion to dismiss made at the close of all the evidence for the reason that the evidence was insufficient as a matter of law to support a conviction. He further maintains that the trial court erred in failing to grant his motion for mistrial, necessitated by an alleged prejudicial comment made to the jury by the county attorney during closing argument. For reasons which we shall more particularly detail in this opinion, we believe that both assignments of error must be overruled and the judgment and sentence of the trial court affirmed.

On the early morning of Thursday, May 1, 1980, shortly after daybreak, a fire was discovered at the Cass County farm home owned by Rowe and his

wife, Layne, the victim in this case. Firefighters were called to the scene, and the nude, mutilated body of Layne Rowe was found wrapped in blankets on a bed located in the west second floor bedroom.

An autopsy was conducted on May 1, 1980, by Dr. Daniel Till, a Lincoln pathologist. The autopsy revealed that she had suffered a depressed skull fracture. Dr. Till testified that in his opinion the skull injury was produced by a blunt traumatic force striking the head behind the left ear. Dr. Till believed that an instrument such as the blunt side of a clawhammer similar to one found in the Rowe home would be the type of instrument that could produce the injury observed to the skull. Notwithstanding the injury to the skull, Dr. Till was of the opinion that the immediate cause of death was due to loss of blood. He believed this to be the case because the autopsy disclosed very little blood remaining in the cardiovascular system. Dr. Till testified that although the injuries to the brain were extremely severe and, in his opinion, were lethal in that they would have eventually caused death of and by themselves, the autopsy disclosed that the heart had not stopped beating due to those head injuries at the time that incisions were made in the trunk of the body. Dr. Till believed that had death been from the head injuries, the heart would have stopped immediately and blood would have clotted and remained in the heart.

The autopsy further disclosed a large incision in the trunk of the victim, extending from immediately below the breastbone to the pubic area and into the vagina and the rectum. The right breast was completely absent, having been amputated with a sharp instrument. The left breast was partially incised and torn, but most of the breast appeared to be still attached to the body. The uterus, while still attached to the body by some loose, soft tissue, was freely movable and almost completely cut out of the body. Both ureters were severed and the right iliac

artery had an incision in it. The body further displayed signs of having been burned.

While Dr. Till believed the head injury was caused by a movable object striking the head, on cross-examination he testified that he could not rule out the possibility that the head injury had been caused by a fall, as maintained by Rowe. Nevertheless, he held to his opinion that the injury was caused by a moving object striking the head rather than by a fall.

Appellant Rowe did not testify on his own behalf but did call as part of his case Drs. Fay Whitla and John Baldwin, two psychiatrists practicing in Lincoln, Nebraska. Rowe told both psychiatrists he had made the incision in his wife's body, believing he was going to be able to remove a child which his wife had left for him. He also advised both psychiatrists that he had surgically removed his wife's breast because he believed she wished him to have something to remember her by. Dr. Emmet Kenney, a psychiatrist, was also called by the State; he also testified he had information concerning Rowe's mutilation of his wife's body. Other witnesses were called by both the State and Rowe, but their testimony is not relevant for our examination of the two limited assignments of error filed by Rowe.

In support of Rowe's first assignment of error, that the trial court erred in failing to sustain his motion to dismiss made at the close of all the evidence for the reason that the evidence was insufficient as a matter of law to support a conviction, Rowe argues that where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the evidence adduced to support the charge is of so weak or doubtful a character that a conviction based thereon cannot be sustained, the resulting conviction must be set aside. As legal support for that position, Rowe cites to us the case of *State v. Buchanan*, 210

Neb. 20, 312 N.W.2d 684 (1981). We do not believe, however, that our opinion in *State v. Buchanan* supports Rowe's position herein. Specifically, in *Buchanan* we said at 28, 312 N.W.2d at 689: "One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt." Furthermore, we have often said that on appeal we will not interfere with a conviction based upon evidence unless it is so lacking in probative force that we can say as a matter of law that it is insufficient to support a verdict of guilt beyond a reasonable doubt. *State v. French*, 206 Neb. 92, 291 N.W.2d 248 (1980); *State v. Meadows*, 203 Neb. 197, 277 N.W.2d 707 (1979); *State v. Sommers*, 201 Neb. 809, 272 N.W.2d 367 (1978). In the instant case the undisputed testimony was that the cause of death was bleeding, caused by the incisions made in the body of Layne Rowe. The evidence is without dispute that these incisions were made by appellant Rowe, even though he maintains he did not do the acts with the intent to cause his wife's death, but, rather, for other reasons. Nevertheless, if the jury believed that he had in fact made the incisions in her body which resulted in her immediate death, there was sufficient evidence from which the jury could find the defendant guilty of murder in the second degree.

Section 28-304(1) provides: "A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." In *State v. Clermont*, 204 Neb. 611, 615, 284 N.W.2d 412, 415 (1979), this court said: "The essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously." We also said in *State v. Clermont, supra* at 616, 284 N.W.2d at 415: "The elements of malice and intent concern the state of mind of the slayer. Malice, in its legal sense, denotes that con-

dition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse . . . ." See, also, *State v. Johnson*, 200 Neb. 760, 266 N.W.2d 193 (1978); *State v. Hardin*, 212 Neb. 774, 326 N.W.2d 38 (1982). Malice means "any willful or corrupt intention of the mind." See *State v. Johnson*, *supra* at 764, 266 N.W.2d at 196. This court has also stated that "malice and intent may be inferred from the evidence relating to the circumstances of the criminal act." *State v. Clermont*, *supra* at 616, 284 N.W.2d at 415.

In *State v. Partee*, 199 Neb. 305, 258 N.W.2d 634 (1977), the defendant was convicted of murder in the second degree. The victim, who was the defendant's wife, had died as a result of a brutal beating. Photographs were taken which indicated that the victim was severely beaten about the head and upper body and that numerous blows would have been required to inflict such a beating. The doctor who performed the autopsy described the victim's injuries, and photographs were introduced. There was evidence indicating that there had been a fight earlier that night. The doctor testified that in his opinion the cause of death was a massive hemorrhage from scalp wounds. In affirming the verdict of the jury we said at 312, 258 N.W.2d at 639: "The evidence in this case was clearly sufficient to support a jury finding that the person who killed the victim acted purposely and maliciously, and with intent to kill. The victim was brutally and relentlessly beaten, and part of her scalp was torn away. The evidence negated any theory that the victim died accidently [sic], or that the perpetrator meant only to injure her and not kill her. Under circumstances such as those presented in this case, the jury could properly infer that the perpetrator acted with malice and intent to kill."

The fact that there was no direct evidence that Rowe intended to kill his wife is of no moment. Certainly, the jury could find from the circumstantial

evidence that Rowe intended to make the incision in his wife's body, thereby causing her death. That was sufficient evidence to require the trial court to submit the case to the triers of fact; to have directed a verdict would have been error. See *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981).

It is not for this court to accept one version of the case over another; that was for the jury. "In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it." *State v. Carter*, 205 Neb. 407, 409, 288 N.W.2d 35, 36 (1980). See, also, *State v. Woodruff*, 205 Neb. 638, 288 N.W.2d 754 (1980); *State v. Sommers*, 201 Neb. 809, 272 N.W.2d 367 (1978).

As a matter of fact, Rowe presented evidence establishing that he had made the deadly incision in his wife's body. He argued, however, that at the time he did so he was not guilty by reason of insanity. The jury chose not to believe his witnesses and, rather, concluded that the acts which admittedly he did were done intentionally and maliciously. We cannot say the jury was wrong. The assignment of error is therefore overruled.

The second assignment of error relates to a statement made by the prosecution during closing argument. During the course of closing argument, after Rowe's counsel had presented argument to the jury, the prosecutor said in part: "And while we're on theories, that I so underhandedly have been supplying you, going back to Dr. Till, *he said* that when you consider everything that he had before him. Well, you know what he said, for I don't have to repeat that to you, but he's considering everything. He's not—as he said: *I* would have expected to see a

pattern bruise, you know, the bruise that rendered the injury. It wasn't there, but that doesn't mean that it didn't happen the way that I believe it to have happened.'' (Emphasis supplied.) Rowe argues that the prosecutor committed prejudicial error entitling Rowe to a mistrial because the prosecutor told the jury that he, the prosecutor, believed the blow to have been caused by a blunt instrument. However, when one reads the entire closing arguments, it is clear that the prosecutor was not conveying to the jury his view but, rather, was paraphrasing Dr. Till's view. The statement, ''but that doesn't mean that it didn't happen the way that I believe it to have happened,'' referred to Dr. Till's belief and not to a belief of the prosecutor. To attempt to reach any other conclusion would be to do violence to the words of the closing argument. This assignment is likewise without merit.

Having therefore overruled both assignments of error, the judgment and sentence of the trial court are in all respects affirmed.

AFFIRMED.