STATE OF NEBRASKA, APPELLEE, V. JERRY L. EVANS, APPELLANT.

338 N.W.2d 788

Filed October 7, 1983. No. 83-016.

434

James R. Wefso, for appellant.

Paul L. Douglas, Attorney General, and Frank J. Hutfless, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

CAPORALE, J.

Following trial by jury, the defendant, Jerry L. Evans, was adjudged guilty of burglary and senenced to the Nebraska Penal and Correctional Complex for a period of not less than 18 nor more than 30 months. He was given credit for the 3 months and 16 days he spent in jail awaiting disposition of the case. We affirm.

The issues, as defined by defendant's assignments of error, are whether (1) Nebraska's identifying physical characteristics act is constitutional, (2) the evidence is sufficient to sustain the conviction, (3) the trial court erred in refusing to charge the jury in the language of certain of defendant's tendered instructions, and (4) the sentence imposed is excessive.

The trial testimony was that at approximately 8

a.m. on July 2, 1982, Paul Osborn entered his Hay Springs, Nebraska, grocery store and discovered that it had been burglarized since its closing the previous day. Over $700 in food stamps and cash was missing, along with merchandise. A window located some 10 feet off the ground above a rear door had been broken such as to admit a small person. In the opinion of a state highway patrolman, two persons were responsible for the break-in, one being needed to lift the other to the window. Bloodstains were found on the broken glass. Fingerprints and palm prints, less than 24 hours old, were found on various articles throughout the store, including a tag or wrapper used in the display of a pair of gloves. Defendant had not been seen in the grocery store during regular working hours prior to July 2, 1982.

At 6 a.m. on the morning of July 2, 1982, Robert McCarter, as he was out walking, saw defendant and a small, young boy speaking with each other. He overheard defendant say to the boy, ''It is over there.'' The boy then walked to a steel shed. At this time McCarter knew nothing of the burglary. After he heard of the burglary he informed his mother, another Hay Springs merchant, about the incident. She informed Osborn. Osborn, after hearing of the conversation, searched the sheds located in the area which had been indicated by McCarter. On July 10, 1982, in the shed which had been the subject of the conversation between defendant and the boy, Osborn found merchandise which he believed to have been stolen from his store. While making a purchase at Mrs. McCarter's store on July 2, 1982, defendant displayed a thick stack of currency.

Defendant testified that his print was on the glove wrapper as a result of his having looked at a pair of gloves while shopping in Osborn's store. He denied any recollection of a conversation with a boy. Defendant was unemployed at the time of the burglary, needed gloves for prospective employment, and his

testimony as to how much, if any, money he had at the relevant time is in conflict.

On July 30, 1982, an affidavit prepared by a Nebraska state patrolman was submitted to the District Court, seeking an order pursuant to the identifying physical characteristics act, Neb. Rev. Stat. §§ 29-3301 et seq. (Reissue 1979), to compel defendant to submit to fingerprinting and palm printing.

Section 29-3302 of that act empowers certain judicial officers to issue orders authorizing identification procedures for the purpose of obtaining identifying physical characteristics. Section 29-3303 thereof provides: "The order may issue upon a showing by affidavit of a peace officer that (1) there is probable cause to believe that an offense has been committed; (2) that procurement of evidence of identifying physical characteristics through nontestimonial identification procedures from an identified or particularly described individual may contribute to the identification of the individual who committed such offense; and (3) that the identified or described individual has refused, or there is reason to believe he will refuse, to voluntarily provide the desired evidence of identifying physical characteristics. The contents of the affidavit may be supplemented or augmented by the affidavits of other persons or by sworn testimony given to the issuing judge or magistrate."

The affidavit recited the fact of the burglary; the finding of prints believed, because of their location, to have been left by the person or persons committing the burglary; that defendant was overheard saying to an unknown person, "the stuff is over there," referring to a shed; and that merchandise taken from the grocery during the burglary was found in the shed. The affidavit also recited that on July 6, 1982, defendant was asked to voluntarily give a sample of his fingerprints and palm prints and that defendant refused. An order requiring the defendant to so submit was entered on August 2, 1982.

On August 3, 1982, pursuant to the order, a palm print was taken from the defendant which matched the one on the glove wrapper found on the floor of the store during the burglary investigation.

As to the first issue, defendant argues that his motion to suppress the palm print exemplar, taken from him pursuant to the order issued under the identifying physical characteristics act, was erroneously denied. Defendant argues more specifically that § 29-3303 is constitutionally infirm in that it authorized him to be unreasonably seized by police authorities in violation of the fourth amendment of the U.S. Constitution and article I, § 7, of the Nebraska Constitution. He urges that our opinion in *State v. Swayze*, 197 Neb. 149, 247 N.W.2d 440 (1976), is wrong and should therefore be reconsidered and overruled. We disagree.

In *Swayze* a recently born child was found abandoned in a restroom at a state wayside area. A large amount of blood was found on bedding in the room where the child was believed to have been born. Police had four suspects and received orders pursuant to §§ 29-3301 et seq. to obtain blood samples from each. Swayze's blood sample matched that found at the scene, and she was convicted of assault with intent to commit murder. On appeal she questioned the constitutionality of the statute on fourth and fifth amendment grounds. This court upheld the statute, finding specifically that *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), was controlling. In *Schmerber* a man who had been arrested for drunk driving was compelled to give a blood sample over his objection. The U.S. Supreme Court found that his arrest was supported by probable cause and that since the exigency of the circumstances required present action to obtain evidence of Schmerber's blood alcohol level, it was a proper search incident to arrest.

It appears that the progenitor of statutes such as our identifying physical characteristics act is cer-

tain dictum found in *Davis v. Mississippi*, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969). In *Davis*, police conducted a mass roundup of young men in order to fingerprint them for the purpose of seeking the individual who had raped a woman. The Court reversed Davis' conviction, holding that the fingerprint exemplar taken during the roundup was the result of an unreasonable seizure and should have been suppressed. The Court did not decide what quantum of suspicion would justify a seizure for fingerprinting, but stated: "Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense." 394 U.S. at 727.

Responding to this language, several states adopted statutes allowing judicial officers to issue orders empowering police authorities to seize persons in order to obtain nontestimonial identification evidence. See, Ariz. Rev. Stat. Ann. § 13-3905 (1978); 7B Colo. Rev. Stat. Rule 41.1 (1973); Idaho Code § 19-625 (1979); Iowa Code Ann. §§ 810.2 et seq. (West 1979 & Supp. 1983); N.C. Gen. Stat. §§ 15A-271 et seq. (Repl. 1978); Utah Code Ann. § 77-8-1 (Repl. 1982). See, also, Model Code of Pre-Arraignment Procedure app. VIII at 669 et seq. (1975). In most instances the orders issue upon an affidavit of a police officer showing that there is probable cause to believe that an offense has been committed; that there are reasonable grounds, not amounting to probable cause to arrest, to suspect that the person named or described in the affidavit committed the offense; and that the results of specific nontestimonial identification procedures will be of material aid in determining whether the person named in the affidavit committed the offense. In the only re-

ported case we have found involving a direct constitutional attack on this type of statute, the statute was upheld. *People v. Madson*, 638 P.2d 18 (Colo. 1981).

Defendant argues that unlike the above-cited statutes the one at hand requires no nexus between the crime and the individual seized. In this respect he is mistaken. We must bear in mind that where a statute is susceptible of two constructions, under one of which the statute is valid, while under the other it is unconstitutional or of doubtful validity, that construction which gives it validity should be adopted. *Nebraska P.P. Dist. v. City of York*, 212 Neb. 747, 326 N.W.2d 22 (1982).

A similar process of interpretation was employed by the Arizona Supreme Court under their § 13-3905, which provides that an order to compel the submission of an individual to nontestimonial identification procedures can issue on the showing by affidavit of a peace officer that "1. Reasonable cause for belief that a specifically described criminal offense punishable by at least one year in the state prison has been committed. 2. Procurement of the evidence of identifying physical characteristics from an identified or particularly described individual may contribute to the identification of the individual who committed such offense. 3. Such evidence cannot otherwise be obtained by the investigating officer from either the law enforcement agency employing the affiant or the criminal identification division of the Arizona department of public safety." Arizona interpreted that language to require a showing that reasonable grounds exist to connect the person detained with the crime being investigated. *State v. Grijalva*, 111 Ariz. 476, 533 P.2d 533 (1975), *cert. denied* 423 U.S. 873, 96 S. Ct. 141, 46 L. Ed. 2d 104; *Long v. Garrett*, 22 Ariz. App. 397, 527 P.2d 1240 (1974).

Unlike the Arizona Supreme Court, though, we are not willing to follow the suggestion of the *Davis*

dictum that seizures for the purpose of compelling nontestimonial identification evidence under § 29-3303 are permissible, under either the fourth amendment to the U.S. Constitution or article I, § 7, of the Nebraska Constitution, on a showing of less than probable cause to believe the person to be seized and compelled to submit to identification procedures committed the crime under investigation. We are led to this conclusion by a reading of the U.S. Supreme Court cases decided after *Davis v. Mississippi*, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969), which effectively dispel any speculation created by the above-quoted dictum.

In *Dunaway v. New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979), a suspect was not told that he was under arrest but was picked up by police officers and held for questioning. Dunaway was convicted after information supplied during his interrogation incriminated him. Dunaway's motion to suppress evidence obtained by the seizure was denied by the state courts. The U.S. Supreme Court reversed, rejecting the State's contention that Dunaway's seizure was permissible because it was based upon reasonable suspicion and did not amount to an arrest. The Court stated: "The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an 'arrest' under state law. The mere facts that petitioner was not told he was under arrest, was not 'booked,' and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, [citation omitted], obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny. Indeed, any 'exception' that could cover a seizure as intrusive as that in this case would threaten to swallow the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause." 442 U.S. at 212-13.

In *Florida v. Royer*, ____ U.S. ____, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983), the Court reversed a conviction of a man convicted of transporting narcotics. The defendant had initially been apprehended as he walked through an airport after it was determined by police that he fit the profile of a drug courier. He was held in a small room at the airport until his luggage could be brought to him. The suitcases were then opened, revealing a quantity of marijuana. At trial Royer's motion to suppress was denied, but that denial was reversed by the Florida District Court of Appeal. In the U.S. Supreme Court it was argued that the reasonable suspicion standard for police investigatory stops enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), should apply to Royer's airport seizure by police officers. The Court disagreed, and concluded "that at the time Royer produced the key to his suitcase, the detention to which he was then subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity." 103 S. Ct. at 1326.

We find these cases persuasive in reaching the conclusion that the compulsion of a person by police officers to accompany them to a police station or hospital, or wherever, and the forced submission to nontestimonial identification procedures, is a seizure of such a magnitude that more than mere suspicion is required. We read the identifying physical characteristics act to require a showing of probable cause to believe the person to be so seized has engaged in an articulable criminal offense prior to the judicial officer issuing an order pursuant to § 29-3303. As so interpreted, the act is constitutional. It would be anomalous and indeed bizarre to require such probable cause prior to the seizure of papers, books, and other objects, but not for the seizure of persons. See, also, *Matter of Abe A.*, 56 N.Y.2d 288, 437 N.E.2d 265, 452 N.Y.S.2d 6 (1982), for a case reaching the same conclusion.

The next inquiry is whether the order requiring Evans to submit to fingerprinting was based upon a showing of probable cause that a crime was committed and that the defendant was the person committing it. We are guided in this inquiry by the recent case of *Illinois v. Gates*, \_\_\_\_ U.S. \_\_\_\_, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *Gates* teaches that findings of probable cause necessary for fourth amendment seizures pursuant to a warrant are to be interpreted in a commonsense manner with an eye to the totality of the circumstances. The same can be said for findings under § 29-3303.

The affidavit supporting the order in this case establishes the fact that a burglary occurred and that shortly after that burglary the defendant was seen and heard conversing with a small boy, and that the words "the stuff is over there" were uttered by the defendant in reference to a shed. The fruits of the burglary were later found in the same shed. The defendant was in Hay Springs, Nebraska, during the time the burglary occurred. We find that the affidavit was sufficient to establish probable cause to believe that the defendant was involved in the burglary.

As to the sufficiency of the evidence, the defendant argues principally that since the facts and circumstances are reasonably susceptible of two interpretations, they must be resolved in favor of the accused and therefore the evidence is insufficient to convict him.

In making that argument he relies principally upon *State v. Earlywine*, 191 Neb. 533, 215 N.W.2d 895 (1974). In so arguing he overlooks the clear import of the later case of *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981), which acknowledges that while some decisions of this court may be found which create confusion as to the State's burden in such a case, the better reasoned decisions of other courts, and the reasoning adopted in *Buchanan*, are that one accused of a crime may be convicted on the

basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. See, also, *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983); *State v. Evans*, 214 Neb. 432, 334 N.W.2d 5 (1983).

It is also the rule that after a jury has considered all the evidence and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of evidence, if the evidence sustains some rational theory of guilt. *State v. Mackey*, 200 Neb. 549, 264 N.W.2d 430 (1978); *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974).

Here, the evidence, including that entry was obtained through a broken window which would allow the admission of a small person, the finding of defendant's palm print on a glove wrapper within the store, and the discovery of the stolen items as a result of a conversation between the defendant and the unknown child, together with the other circumstances, certainly sustains a rational theory of guilt. Not unlike in *State v. Pena*, 208 Neb. 250, 302 N.W.2d 735 (1981), the jury was not required to accept defendant's explanation as to how his print found its way onto the glove wrapper.

As recently observed in *State v. Rowe, supra*, it is not for this court to accept one version of the case over another; that was for the jury. In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.

Defendant's claim that the evidence is insufficient to support his conviction is without merit.

Next, the defendant argues that the trial court erred in refusing to charge the jury in the language of his tendered instruction Nos. 1 through 4. How-

ever, his argument deals only with tendered instruction Nos. 1 and 4. Since consideration of assignments of error is limited to those discussed in the brief, we do not address tendered instruction Nos. 2 and 3. See, Neb. Ct. R. 9D(1)d (Rev. 1982); Neb. Rev. Stat. § 25-1919 (Reissue 1979); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983).

Defendant's tendered instruction No. 1 undertook to inform the jury that he had a right to testify on his own behalf; that the jury had no right to disregard his testimony merely because he was the defendant, nor was it to receive the testimony as true; but that it was required to consider whether the testimony was true. The defendant does not undertake to explain how the failure to so instruct the jury prejudiced his defense. The fact that he did testify would seem to convey to the jury the notion that he had a right to do so. As stated in *State v. Bartholomew*, 212 Neb. 270, 322 N.W.2d 432 (1982), error cannot be predicated based on instructions given to the jury in the absence of prejudice to the rights of the defendant. That is equally the case with respect to the failure to give tendered instructions. Moreover, there was no error; the court's standard credibility instruction properly advised the jury of the factors it was to consider in assessing the credibility of any witness.

Defendant's tendered instruction No. 4 simply misstated the law as to how the jury was to consider circumstantial evidence. The court's instructions properly informed the jury as to the law in that regard, which is as set forth in the preceding discussion concerning the sufficiency of the evidence.

Lastly, defendant argues that the trial court erred in not placing him on probation. The presentence investigation of the defendant is not a favorable one. He has a criminal history dating back to 1976, when he was 15 years old. It has long been the rule that an order denying probation and a sentence imposed within statutorily prescribed limits will not be dis-

turbed on appeal unless there has been an abuse of discretion on the part of the sentencing judge. *State v. Patterson*, 213 Neb. 686, 331 N.W.2d 500 (1983). The defendant was found guilty and convicted of violating Neb. Rev. Stat. § 28-507 (Reissue 1979). This is a Class III felony punishable by up to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1979). Under the circumstances it cannot be said that there was an abuse of discretion which worked to the prejudice of the defendant.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must dissent in this case. While I concur completely with that portion of the majority opinion which provides that Neb. Rev. Stat. § 29-3303 (Reissue 1979) requires a showing of probable cause that a crime has been committed and that the person compelled to produce the nontestimonial evidence has committed that crime before an order requiring one to give fingerprints may issue, I cannot agree that the evidence in this case, even when considered as a whole, was sufficient to submit the case to the jury. The circumstantial evidence presented to the jury is to the effect that a glove wrapper contained a palm print of the accused; that he was overheard saying to a young boy, "It is over there"; and that he displayed a thick stack of currency while making a purchase on July 2, 1982. The palm print was on a wrapper that had been around a pair of gloves offered for sale and which the defendant had a right to touch. The fact that no one could remember that he was in the store was not sufficient, in my view, to create any inference of his having placed his palm print on the wrapper during the course of a robbery. Moreover, his pointing in a general direction and saying "It is over there" are not sufficient to connect him with the fact that certain goods from the store are later found in a shed a week after the burglary. No goods, including the gloves, were ever found in the possession of the defendant or on any

property owned or controlled by the defendant. While it is true that one accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt, and the State is not required to disprove every hypothesis but that of guilt, see *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981), it is likewise true that to sustain a conviction for a crime the corpus delicti must be proved beyond a reasonable doubt. *State v. Workman*, 213 Neb. 479, 329 N.W.2d 571 (1983). In order to convict one of burglary in violation of Neb. Rev. Stat. § 28-507 (Reissue 1979), the State must produce evidence to prove beyond a reasonable doubt that the accused willfully, maliciously, and forcibly broke and entered any real estate or any improvements thereon with intent to commit any felony or with intent to steal property of any value. The State was able to establish the elements of the crime only by requiring the jury to make substantial leaps of faith from one bit of circumstantial evidence to another. In my view, it was asking more than the jury should have been asked to do, and, like our decision in *State v. Workman*, *supra*, the action should have been dismissed.

WHITE, J., joins in this dissent.