527 P.2d 1240

**Donna LONG, Petitioner,**

v.

**The Honorable Lee GARRETT, Judge, Division Two, Superior Court, Pima County, and the Honorable Robert Buchanan, Judge, Division Thirteen, Superior Court, Pima County, and the Tucson Police Department and Jerry Hathaway, an Officer thereof, Respondents.**

**No. 2 CA–CIV 1726.**

Court of Appeals of Arizona,
Division 2.

Nov. 13, 1974.

Rehearing Denied Dec. 11, 1974.
Review Denied Jan. 28, 1975.

Michael J. Brown, P. C., by Michael J. Brown, Tucson, for petitioner.

Dennis DeConcini, Pima County Atty. by John W. Dickinson, Deputy County Atty., Tucson, for respondents.

OPINION

HATHAWAY, Chief Judge.

Petitioner's special action challenges the constitutionality of A.R.S. § 13–1424, both on its face and as construed and applied, in that it violates the petitioner's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and similar provisions of the Arizona Constitution. We find, however, that the statute in question is not violative of petitioner's rights and we deny the petition.

The pertinent facts giving rise to the challenge of A.R.S. § 13–1424 [1] are as follows:

On approximately July 5, 1973, a refund check in the amount of $167.95 was sent by Sears, Roebuck and Co. to Jan Dee Summers in Tucson. On approximately July 23, 1973, the endorsed check was deposited in a Tucson bank account owned by the mother of the petitioner. The respondent Judge Lee Garrett, acting on a petition filed June 21, 1974, by Tucson Police Officer Jerry Hathaway, signed an order authorizing the petitioner to be taken into "temporary detention" for the purpose of surrendering a certain handwriting sample. It was the contention of Officer Hathaway in his petition to obtain evidence of physical characteristics that Miss Summers never received the check and never gave petitioner or anyone else permission to sign her name to the check. Miss Summers and Miss Long had been roommates before Miss Summers moved to Virginia. After Officer Hathaway was unable to locate petitioner, he refiled the petition on August 15 and the respondent Judge Robert Bucchanan re-executed the order granting an additional fifteen days from August 15 within which to take the petitioner into "temporary detention." On August 30, this court ordered a stay in the proceedings to allow us to decide the constitutional issue presented by petitioner.

In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme

---

1. "§ 13–1424. Detention for obtaining evidence of identifying physical characteristics
A. A peace officer who is engaged, within the scope of his authority, in the investigation of an alleged criminal offense punishable by at least one year in the state prison, may make written application upon oath or affirmation to a magistrate for an order authorizing the temporary detention, for the purpose of obtaining evidence of identifying physical characteristics, of an identified or particularly described individual residing in or found in the jurisdiction over which the magistrate presides. The order shall require the presence of the identified or particularly described individual at such time and place as the court shall direct for obtaining the identifying physical characteristic evidence. Such order may be issued by the magistrate upon a showing of all of the following:
1. Reasonable cause for belief that a specifically described criminal offense punishable by at least one year in the state prison has been committed.
2. Procurement of evidence of identifying physical characteristics from an identified or particularly described individual may contribute to the identification of the individual who committed such offense.
3. Such evidence cannot otherwise be obtained by the investigating officer from either the law enforcement agency employing the affiant or the criminal identification division of the Arizona department of public safety.
B. Any order issued pursuant to the provisions of this section shall specify the following:
1. The alleged criminal offense which is the subject of the application.
2. The specific type of identifying physical characteristic evidence which is sought.
3. The relevance of such evidence to the particular investigation.
4. The identity or description of the individual who may be detained for obtaining such evidence.
5. The name and official status of the investigative officer authorized to effectuate such detention and obtain such evidence.
6. The place at which the obtaining of such evidence shall be effectuated.
7. The time that such evidence shall be taken except that no person may be detained for a period of more than three hours for the purpose of taking such evidence.
8. The period of time, not exceeding fifteen days, during which the order shall continue in force and effect. If the order is not executed within fifteen days, a new order may be issued, pursuant to the provisions of this section.
C. The order issued pursuant to this section shall be returned to the court not later than thirty days after its date of issuance and shall be accompanied by a sworn statement indicating the type of evidence taken. The court shall give to the person from whom such evidence was taken a copy of the order and a copy of the sworn statement indicating what type of evidence was taken, if any.
D. For the purposes of this section, 'identifying physical characteristics' includes, but is not limited to, the fingerprints, palm prints, footprints, measurements, handwriting, handprinting, sound of voice, blood samples, urine samples, saliva samples, hair samples, comparative personal appearance, or photographs of an individual. Added Laws 1971, Ch. 75, § 1."

Court stated that any restraint by the authorities of a person, as well as the seizure of physical evidence during that period of restraint, is subject to the prohibition against unreasonable searches and seizures under the Fourth Amendment. And if the detention is found to be illegal, any physical evidence seized at the time of the detention is a direct product of the illegality. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

■ Petitioner is incorrect in her assertion that a detention prior to arrest is unlawful if done without probable cause. An obvious example is that detentions and searches at the nation's borders can be made without probable cause. Witt v. United States, 287 F.2d 389 (9th Cir. 1961); Henderson v. United States, 390 F.2d 805 (9th Cir. 1967). Therefore, in lieu of probable cause, what must be ascertained is whether the detention is "reasonable" under the circumstances. See Drake, Detention for Taking Physical Evidence Without Probable Cause, 14 Ariz.L.Rev. 132 (1972).

■ All of those factors which in their totality lead to the "reasonable" standard are present in A.R.S. § 13–1424. The detention is authorized by a magistrate, a factor enunciated by the Supreme Court in Davis v. Mississippi, supra. The statute limits the detention to three hours and as there is no exigency involved in securing a handwriting exemplar, the detention should be at a time which is convenient for the detained person. The crime involved must be a felony and, as society has a substantial interest in preventing serious crimes, the detention's reasonableness in that regard is apparent.

Another matter of importance is the inability to obtain the evidence elsewhere. A.R.S. § 13–1424(A)(3) requires a showing that "such evidence cannot otherwise be obtained by the investigating officer from either the law enforcement agency employing the affiant or the criminal identification division of the Arizona department of public safety." In his petition to obtain the handwriting exemplar, Officer Hathaway stated that the evidence sought from Miss Long was not available from any other source.

The major contention of petitioner is that while the statute requires a showing of "reasonable cause for belief that a specifically described criminal offense punishable by at least one year in the state prison has been committed," there is no requirement of a showing that the person detained is connected in any way with the crime. However, subsection (B)(3) of the statute provides that any order issued pursuant to the statute must specify "the relevance of such evidence to the particular investigation." We find that under this provision, the officer must show why the evidence may implicate the individual and provides the necessary nexus between the crime and the suspect. Officer Hathaway complied with this provision and such connection has been established to our satisfaction.

■ We agree with petitioner that the language of A.R.S. § 13–1424 is not as explicit as jurists would like. However, it is the duty of the court to uphold statutes if the language will permit. Coggins v. Ely, 23 Ariz. 155, 202 P. 391 (1921). This is true even if the language is indefinite and uncertain. Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158 (1948). We hold that a reasonable reading of the statute allows the "temporary detention" without an unconstitutional deprivation of petitioner's rights.

Relief denied.

KRUCKER, J., concurs.

HOWARD, Judge (dissenting).

A.R.S. § 13–1424 is a legislative attempt to fashion a law which would comply with the case of Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). In *Davis* the defendant was one of twenty-four Negro youths picked up by the police without a warrant and taken to the police station for fingerprinting. He was released but subsequently charged with

and convicted of rape. The Mississippi Supreme Court sustained the admission of the fingerprint evidence and affirmed the conviction. The United States Supreme Court reversed holding that the warrantless detention of the defendant during which the fingerprints used at trial were taken constituted an unreasonable seizure of his person in violation of the Fourth Amendment. There is language in *Davis* which apparently led our legislature to conclude that a statute such as A.R.S. § 13–1424 would pass constitutional muster. It is as follows:

> "Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth ' Amendment even though there is no probable cause in the traditional sense. See Camara v. Municipal Court, 387 U. S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)." 394 U.S. at 727, 89 S.Ct. at 1397.

The court further stated, however, that it did not have to decide whether the requirements of the Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest. Traditionally probable cause to arrest is defined to exist when facts within the officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been committed and that the defendant committed it. State v. Williams, 104 Ariz. 319, 452 P.2d 112 (1969).

The probable cause requirement has not been eliminated. In *Camara* the court states:

> "In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." 387 U.S. at 534, 87 S.Ct. at 1734.

*Camara* makes it clear that in order to apply the standard of probable cause, one must first focus on the public interest, which allegedly justifies intrusion upon the constitutionally protected interest of the private citizen. The need to search is balanced against the invasion which the search entails. In balancing these interests, the following should be considered: (1) Is the primary purpose of the search to discover criminal evidence? (2) Is there a necessity for the particular type of search? (3) Can this type of search be effectively done in a less intrusive manner? (4) What is the extent of the invasion of privacy?

What is suggested by *Camara* is that under certain circumstances "probable cause" and "reasonableness" are synonymous. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) relied upon by the majority represents another application of the *Camara* theory. The *Terry* search is justified by the *necessity* to protect the life of the police officer.

Witt v. United States, 287 F.2d 389 (9th Cir. 1961) also cited by the majority is a border search case. As is pointed out by the court in *Witt*, border searches have always been placed in a category separate and apart from other searches and the majority's reliance on *Witt* is misplaced.

In the case sub judice the purpose of the arrest under the statute is to further a criminal investigation. Unlike *Terry* or *Camara*, there is no necessity or emergency which would justify departure from the traditional definition of probable cause. In place of the dragnet approach used by the police in Davis v. Mississippi, supra, the Arizona statute permits the police to pick up individuals one-by-one on the grounds that it *may contribute* to the identification of the individual who committed the offense. This ephemeral standard offers no protection for the individual's Fourth

Amendment rights. The arrest of anyone could be justified on the grounds that if the identifying physical evidence proves that the individual is not connected with the crime, then it at least has contributed to the identification of the individual who did commit the offense by eliminating one who did not.

The majority's attempt to hold the statute constitutional is valiant, but futile. The absence of a nexus of probable cause renders the statute unconstitutional. I would reverse.