533 P.2d 533

**STATE of Arizona, Appellee,**

v.

**Frank Ares Daniel GRIJALVA, Appellant.**

No. 2986.

Supreme Court of Arizona,
En Banc.

March 24, 1975.

Rehearing Denied April 22, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen., by Thomas A. Jacobs and Georgia Butcher, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, by Charles E. Babbitt and Lindsay Brew, Asst. Public Defenders, Tucson, for appellant.

HAYS, Justice.

Frank Ares Daniel Grijalva was found guilty by a jury and sentenced on the following counts: (1) first degree armed burglary in violation of ARS § 13–302, not less than 5 nor more than 10 years in the Arizona State Prison; (2) first degree rape, ARS § 13–611, not less than 20 nor more than 30 years; (3) first degree armed burglary, ARS § 13–302, not less than 5 nor more than 10 years; (4) assault with

intent to commit rape, ARS § 13–252, not less than 13 nor more than 14 years. All sentences are to run concurrently.

These counts arose from two separate incidents in which the defendant entered the home of the victim at night and raped or attempted to rape her. In neither case could the victim make an in-court identification of the defendant as the assailant.

Prior to trial, the defense sought to suppress certain evidence taken pursuant to ARS § 13–1424, including photographs of the defendant, his fingerprints, and six hairs from his head. The evidence was taken from Grijalva at the Tucson Police Department one week prior to his arrest. The motion to suppress the evidence was denied. At the trial, there was testimony to the effect that the defendant's fingerprints matched the latent prints found at the home of each of the victims and that hairs found on the pantyhose of one of the women matched those of Grijalva.

On appeal, Grijalva contends that ARS § 13–1424 is violative of the Fourth Amendment to the United States Constitution on its face and as applied in this instance. He also maintains that a person cannot be convicted of armed burglary if the evidence shows that the assailant armed himself after entering the victim's house.

ARS § 13–1424 provides for the temporary pre-arrest detention of an individual for the purpose of obtaining evidence of physical characteristics such as photographs, fingerprints and hair samples. The detention is pursuant to a magistrate's order which is in force for 15 days and the period of detention cannot exceed three hours at a time and place directed by the court. In addition, the order must include the alleged criminal offense which is the subject of the investigation, the specific type of identifying physical characteristic evidence sought, the relevance of such evidence to the investigation, the identity or description of the individual detained, and the name and official status of the investigative peace officer authorized to effectuate the detention and obtain the evidence.

 It is the duty of this court to uphold statutes if the language will permit although the statute in question may not be "artfully drawn." Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158 (1948). We uphold the statute at issue here.

 A search can be defined as an examination of one's person "with a view to the discovery of . . . evidence of guilt to be used in prosecution of a criminal action." Haerr v. United States, 240 F.2d 533, 535 (5th Cir. 1957). A search of one's person is obviously predicated on a seizure. The Fourth Amendment protects persons from unreasonable searches and seizures and further provides that warrants shall issue only on probable cause. A temporary detention order is not, however, of the stature of a warrant necessitating probable cause. An arrest is a uniquely harsh restriction of liberty with severe consequences for the one arrested; a detention for no more than three hours is a significantly lesser invasion.

"Substantial considerations favor the recognition of a carefully limited right of brief police detention on less than probable cause to believe the person detained has committed a felony. If even slight interference with freedom of personal movement is invariably conditioned upon a showing of prior probable cause, then either the standard of probable cause will be lowered and with it the protection against formal arrests and substantial interferences with liberty; or police activity which appears perfectly proper when measured against a standard of reasonableness will nonetheless be forbidden." Gilbert v. United States, 366 F.2d 923, 928 (9th Cir. 1966).

 The United States Supreme Court recognized the distinction between a detention and an arrest in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court developed the analysis of Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), of reasonableness as the primary inquiry of the Amendment, reasonableness in considering "all the circumstances of the particular governmental invasion of a citizen's personal security." Terry v. Ohio, 392 U.S. at 19, 88 S.Ct. at 1878–79. The necessity of the search is balanced against the invasion of the privacy of the citizen that the search entails. Terry v. Ohio, *supra*; Camara v. Municipal Court, *supra*.

The *Terry* court suggested that an officer may make an intrusion upon an individual short of an arrest when lacking "facts sufficient to warrant a belief that the person has committed or is committing a crime . . ." 392 U.S. at 26, 88 S. Ct. at 1882. This was elaborated upon in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

In *Davis,* the only issue before the Court was whether the fingerprints obtained from one later accused should have been excluded as the product of a pre-arrest detention without a warrant and without probable cause.

The rape victim in *Davis* could only describe her assailant as a Negro youth. The local police over a period of ten days took at least 24 youths, including Davis, to headquarters where they were questioned, fingerprinted and released. The police also questioned another 40 or 50 persons of the same general description. Eventually, Davis was fingerprinted a second time and confined overnight. The State conceded that the police were acting without probable cause, but in defending its actions, contended that the Fourth Amendment was not applicable to the investigatory process.

"Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' We made this explicit only last Term in Terry v. Ohio [supra] . . .

"Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the finger-

printing process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. See Camara v. Municipal Court [supra]. Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." 394 U.S. at 726–27, 89 S.Ct. at 1397–98.

The *Davis* court held that the detention in that case was improper but left open the question of whether procedures might be developed for obtaining fingerprints when probable cause for arrest was lacking. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). This may well have been the impetus for ARS § 13–1424.

The concept of reasonableness requires a balancing between the public necessity and the extent to which an individual's interest in privacy is invaded. Certainly the interest of society in the investigation of felonies is very high and the statute requires that it must be otherwise impossible to obtain the necessary identification evidence except in this manner.

 The degree of intrusion into the person's privacy is relatively slight. Photographs, more so than fingerprints, involve none of the probing that the *Davis* court found to mark a search of an unreasonable nature. Similarly, clipping several head hairs is only the slightest intrusion upon the body, if any at all, and does not constitute anything unreasonable. United States v. D'Amico, 408 F.2d 331 (2d Cir. 1969).

The key to the statute and its great strength is that a magistrate must make the necessary determinations. This was implied in Davis v. Mississippi, *supra,* as it was in Terry v. Ohio, *supra.*

"And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. at 1880.

 First, and this is implicit in the statute before us, a nexus must be established between the person detained and the crime being investigated. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). It must be made clear to the magistrate issuing the order that there is reasonable cause to believe that such a connection exists.

Second, as set forth in the statute, there also must be shown to be reasonable cause to believe that the offense described in the application of the officer for an order has been committed and that it is an offense punishable by at least one year in the state prison.

These and other factors enumerated in the statute must be set forth with sufficient specificity so that the magistrate can make an independent and neutral judgment in deciding whether or not to issue the order.

██ ██ This test was met by the application made by a detective of the Tucson Police Department to the Superior Court of Pima County. The "Petition to Obtain Evidence of Physical Characteristics" gave as the basis to believe that a burglary and assault with intent to commit rape had occurred, the statement of the victim and physical evidence in the form of pantyhose used to conceal the assailant's face, a paring knife used as a weapon, latent fingerprints lifted at the scene, and a physical

description of the perpetrator. The petition further stated that Grijalva was a suspect because he fitted the general description ("mexican [sic] male, 20–25 years, 5'6" tall, 120 pounds"), because of "a similarity of *modus operandi*," and because the latent prints taken at the scene had been tentatively matched to a "very poor specimen of Grijalva's known fingerprint." The general description alone was too broad to justify detention of any individual. "Modus operandi" without a greater explanation also would have been insufficient as a basis for the order. However, the tentative matching of fingerprints was an adequate foundation for the order. It was properly granted by the judge.

We need not reach the final issue raised by the appellant concerning armed burglary. The sentence imposed on that count was within the statutory limits of first degree burglary. ARS § 13–302. Whether or not defendant was armed is therefore not material.

The judgments of guilt and sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and LOCKWOOD and HOLO-HAN, JJ., concur.