831 P.2d 398

**STATE of Arizona, Appellee,**

v.

**Randy Joseph WEDDING, Appellant.**

**No. 1 CA–CR 89–1264.**

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 14, 1992.

Review Denied June 30, 1992.

Grant Woods, Atty. Gen. by Jessica Gifford Funkhouser, Chief Counsel, Crim. Div., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by John W. Rood, III, James M. Likos, Deputy Public Defenders, Phoenix, for appellant.

## OPINION

### LEVI RAY HAIRE, Judge, Retired.

Appellant Randy Joseph Wedding (defendant) has appealed from judgments of conviction on thirty-two counts and the sentences imposed. For the reasons stated below, we affirm the convictions and sentences.

## PROCEDURAL HISTORY

The defendant was indicted on four counts of burglary in the first degree of a residential structure, class 2 felonies, two counts of burglary in the first degree of a nonresidential structure, class 3 felonies, six counts of aggravated assault, class 3 felonies, sixteen counts of kidnapping, class 2 felonies, thirteen counts of sexual assault, class 2 felonies, and one count of attempted sexual assault, a class 3 felony.

After the defendant's motion to suppress evidence was denied, he waived his right to a jury trial and the case was submitted to the court on the record, consisting of the transcript of the grand jury proceedings and various departmental police reports.

The court found the defendant guilty and imposed aggravated sentences on all counts. The sentences collectively totaled 320 years.

## FACTS

The facts leading to the arrest of the defendant are basically undisputed. Numerous sexual assaults with a similar *modus operandi* had occurred in Maricopa and Pima Counties. In particular, from March 12, 1986 through June 6, 1988, six women were assaulted in Maricopa County on different occasions. In one instance, the suspect gained entry to the woman's residence on the pretext of having car trou-

ble. In the five other instances, the women were leasing agents for residential or commercial properties. In those cases, the suspect posed as a prospective tenant and while being shown the properties, committed the sexual and other assaults. On three occasions, the victims were threatened with a hand gun, and on three occasions, the victims were threatened with a knife.

A multi-agency task force was formed to investigate what became known as the case of the "leasing agent rapist." In connection with the investigation, a composite sketch of the rapist was made and publicly disseminated along with descriptions of three vehicles used by the suspect in the sexual assaults. On July 10, 1988, the Tempe Police Department was contacted by the defendant's 16–year–old neighbor. He told them the composite drawing looked like the defendant and that the defendant had vehicles similar to those used in the assaults. The neighbor supplied to the police a photograph of the defendant which matched the descriptions of the assailant given by the victims.

The police located a 1987 accident report relating to a motor vehicle accident in which the defendant was involved. The defendant had written a witness statement which was part of this report. During their investigation, the police had previously obtained from a rental office a card filled out by the leasing agent rapist. The police took both handwriting samples to a Department of Public Safety questioned document examiner who determined that they had been written by the same individual.

Based on this information, on July 11, 1988, at 3:30 p.m., the police obtained an order of detention for obtaining evidence of identifying physical characteristics pursuant to A.R.S. § 13–3905. The order authorized the taking of the defendant's fingerprints, head and pubic hairs, blood and saliva. The order specified that the evidence was to be taken at the facilities of the Tempe Police Department or Department of Public Safety "as soon as reason-

ably practicable following the issuance of the order." Pursuant to A.R.S. § 13–3905, the order stated that the defendant could not be detained for more than three hours for the purpose of executing the order and that the order would be valid until executed, but in no event beyond fifteen days from the date of issuance.

The order was served on the defendant at 7:25 p.m. on the same day that it was issued. At that time, a police officer stopped the defendant's vehicle, asked the defendant for identification and then served the order. The police then took him to the Tempe Police Station to obtain the evidence.

The police first took the defendant's fingerprints. They were immediately matched with latent fingerprints found at the scenes where four sexual assaults had occurred. When these matched, the defendant was given his *Miranda* rights. Samples of head and pubic hairs, saliva and blood were taken, and the defendant was formally arrested at approximately 8:11 p.m. that evening.

On appeal the defendant raises the following issues:

1. Is A.R.S. § 13–3905 unconstitutional on its face and as applied to the defendant under the fourth amendment to the United States Constitution because the statute allows for the taking of physical evidence such as blood, saliva and pubic hair on less than probable cause?

2. Is A.R.S. § 13–3905 unconstitutional on its face under the fourth amendment to the United States Constitution because the statute fails to specify how to effectuate the detention of the identified person?

3. Is A.R.S. § 13–3905 unconstitutional as applied to defendant under the fourth amendment to the United States Constitution because the order of detention for obtaining identifying physical evidence failed to specify the time of taking the evidence?

4. Is A.R.S. § 13–3905 unconstitutional as applied to defendant under the fourth amendment to the United States Constitution because the manner in which the defendant was detained to obtain the physical evidence did not comply with the statute?

5. Does A.R.S. § 13–3905 violate Article 2, §§ 8 and 10 of the Arizona Constitution?

6. Did the court improperly impose consecutive sentences on Counts VI and VII?

## LACK OF PROBABLE CAUSE STANDARD IN A.R.S. § 13–3905

The defendant argues that A.R.S. § 13–3905 [1] is unconstitutional on its face

---

1. A.R.S. § 13–3905 provides:

A. A peace officer who is engaged, within the scope of his authority, in the investigation of an alleged criminal offense punishable by at least one year in the state prison, may make written application upon oath or affirmation to a magistrate for an order authorizing the temporary detention, for the purpose of obtaining evidence of identifying physical characteristics, of an identified or particularly described individual residing in or found in the jurisdiction over which the magistrate presides. The order shall require the presence of the identified or particularly described individual at such time and place as the court shall direct for obtaining the identifying physical characteristic evidence. Such order may be issued by the magistrate upon a showing of all of the following:

1. Reasonable cause for belief that a specifically described criminal offense punishable by at least one year in the state prison has been committed.

2. Procurement of evidence of identifying physical characteristics from an identified or particularly described individual may contribute to the identification of the individual who committed such offense.

3. Such evidence cannot otherwise be obtained by the investigating officer from either the law enforcement agency employing the affiant or the criminal identification division of the Arizona Department of Public Safety.

B. Any order issued pursuant to the provisions of this section shall specify the following:

1. The alleged criminal offense which is the subject of the application.

2. The specific type of identifying physical characteristic evidence which is sought.

3. The relevance of such evidence to the particular investigation.

4. The identity or description of the individual who may be detained for obtaining such evidence.

and as applied to him because it does not require probable cause and permits detention of the identified person and the taking of physical evidence beyond that permitted by the fourth amendment without probable cause. He further argues there was no such probable cause in this case.

The defendant argues that the United States Supreme Court cases interpreting the fourth amendment involving bodily intrusions to obtain some types of physical evidence have indicated that probable cause is required. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (following lawful arrest for DUI, police could take blood samples with probable cause but without a search warrant because exigent circumstances existed). He notes that the Supreme Court has implied that in narrowly defined circumstances detention for finger-printing might be justified on less than probable cause, if prior judicial authorization has been obtained, *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), but argues that detention to obtain the other types of physical evidence enumerated in the Arizona statute is authorized only if there is a showing of probable cause which he alleges was not present in this case. Finally, while acknowledging that prior Arizona decisions have upheld the constitutionality of A.R.S. § 13–3905, the defendant asks this court to reconsider the issue in light of the United States Supreme Court decision in *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985).

As the defendant concedes, the Arizona Supreme Court upheld the constitutionality of A.R.S. § 13–3905 (then A.R.S. § 13–1424) in *State v. Grijalva*, 111 Ariz. 476, 533 P.2d 533, *cert. denied*, 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975). In *Grijalva*, the Arizona Supreme Court held that under the statute, probable cause to believe that the suspect committed the crime is not a necessary requirement for the temporary detention of a person to obtain evidence of physical characteristics. 111 Ariz. at 479, 533 P.2d at 536. *See also State v. Stanhope*, 139 Ariz. 88, 91, 676 P.2d 1146, 1148 (App.1984); *Long v. Garrett*, 22 Ariz.App. 397, 527 P.2d 1240 (1974).

In *Grijalva*, the court noted that reasonableness is the primary inquiry in determining whether there is a violation of the fourth amendment, considering "all of the circumstances of the particular governmental invasion of a citizen's personal security." 111 Ariz. at 478, 533 P.2d at 535, citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968). It noted that reasonableness involves balancing society's interest in preventing serious crime against the suspect's interest in privacy and stated that "[t]he key to the statute and its great strength is that a magistrate must make the necessary determinations." *Grijalva*, 111 Ariz. at 479, 533 P.2d at 536. The court further noted that consistent with the fourth amendment, the statute required a nexus between the person detained and the crime being investigated and it must be made clear to the magistrate that there is reasonable cause

5. The name and official status of the investigative officer authorized to effectuate such detention and obtain such evidence.
6. The place at which the obtaining of such evidence shall be effectuated.
7. The time that such evidence shall be taken except that no person may be detained for a period of more than three hours for the purpose of taking such evidence.
8. The period of time, not exceeding fifteen days, during which the order shall continue in force and effect. If the order is not executed within fifteen days, a new order may be issued, pursuant to the provisions of this section.
C. The order issued pursuant to this section shall be returned to the court not later than

thirty days after its date of issuance and shall be accompanied by a sworn statement indicating the type of evidence taken. The court shall give to the person from whom such evidence was taken a copy of the order and a copy of the sworn statement indicating what type of evidence was taken, if any.
D. For the purposes of this section, "identifying physical characteristics" includes, but is not limited to, the fingerprints, palm prints, footprints, measurements, handwriting, handprinting, sound of voice, blood samples, urine samples, saliva samples, hair samples, comparative personal appearance, or photographs of an individual.

to believe that such a connection exists. *Id.* The court specifically found constitutional the taking of photographs, fingerprints and head hair samples on reasonable cause, stating that:

> The degree of intrusion into the person's privacy was relatively slight. Photographs, more so than fingerprints, involve none of the probing that the *Davis* court found to mark a search of an unreasonable nature. Similarly, clipping several head hairs is only the slightest intrusion upon the body, if any at all, and does not constitute anything unreasonable.

*Id.,* 111 Ariz. at 479, 533 P.2d at 536 (citation omitted).

Then, in *State v. Via,* 146 Ariz. 108, 704 P.2d 238 (1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986), our supreme court again upheld the constitutionality of the statute in light of *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (seizure of suspect and custodial interrogation at police station without probable cause violates fourth amendment). In holding that *Dunaway* did not cast constitutional doubt on the statute and that its validity was not defeated by failure to provide that the detainee may have legal representation during detention, the court stated:

> We believe, therefore, that A.R.S. § 13–3905 sets forth the type of detainment procedure that the United States Supreme Court has suggested might pass constitutional muster if narrowly circumscribed. *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). Thus, we will continue to adhere to our holding in *Grijalva, supra.*

146 Ariz. at 114, 704 P.2d at 244.

The defendant claims, however, that the physical evidence taken in this case goes beyond the takings considered by the Arizona Supreme Court in *Grijalva* (photographs, fingerprints and head hairs) and *Via* (photographs, fingerprints and personal appearance), and that under *Schmerber* the taking of pubic hairs, saliva and blood requires the higher standard of probable cause rather than the reasonable cause approved by the court in *Grijalva.* He argues that the statute is unconstitutional on that basis and that the taking of this physical evidence from him on less than probable cause violated his fourth amendment rights.

The state's response below and on appeal is that in this case there was probable cause to both seize and search the defendant, and that, accordingly, even if the higher standard of probable cause was required, his rights were not violated and therefore he cannot challenge the constitutionality of the statute on that basis. Because the record clearly reflects that the issuance of the detention order was supported by probable cause, we agree.

 Probable cause to arrest exists when an officer has reasonably trustworthy information sufficient to lead a reasonable person to believe that the offense was committed and that the person to be arrested committed it. *State v. Dixon,* 153 Ariz. 151, 153, 735 P.2d 761, 763 (1987). Probable cause to search exists when there are facts or circumstances which justify a reasonable belief that the place to be searched contains evidence that will connect the accused to the crime. *State v. Moody,* 114 Ariz. 365, 366, 560 P.2d 1272, 1273 (App. 1977).

In this case, such probable cause existed. The affidavit submitted in support of the order of detention for obtaining identifying physical evidence states that the police had information about a similar *modus operandi* in sexual assaults occurring in Maricopa and Pima Counties during an approximately two-year period; that in all of the assaults, the victims described the suspect as having the same physical characteristics; and that the defendant's photograph and composite picture matched those descriptions. The affidavit further stated that the defendant owned vehicles of a type that had been described by the victims in the sexual assaults as ones driven by the individual committing the assaults. Additionally, the police had a sample of the defendant's handwriting from a previously filed accident report and had obtained a writing sample of the rapist from one of the vic-

tims. Upon examination by a questioned document examiner, it was positively determined that both had been written by the same individual. The police had obtained fingerprints from the various crime scenes and determined that the latent prints were identical. The police had also obtained hair and seminal fluid from the various crime scenes. Samples of head and pubic hair, blood, and saliva from the defendant were necessary for the purposes of comparison.

The affidavit clearly supports the state's position and the superior court judge's finding that there was probable cause to search and seize the defendant at the time of the detention. Therefore, the defendant's argument that his fourth amendment rights were violated because there was no probable cause fails. In arriving at this conclusion, we recognize that in certain circumstances a bodily intrusion may be so substantial that it constitutes an unreasonable search even though the facts would otherwise be sufficient to support a finding of probable cause to detain and search an individual. *See Winston v. Lee, supra.* The defendant, however, does not argue that the existence of probable cause would not justify his detention and the seizure of the physical evidence involved in this case. Accordingly, we need not address the circumstances involved in *Winston* and *Winston*'s possible application to the facts of this case.

### LACK OF SPECIFICITY AS TO MANNER OF DETENTION

■ The defendant argues that A.R.S. § 13–3905 is constitutionally infirm because it fails to require the magistrate to set forth a precise manner of obtaining the presence of the identified person. He suggests that this vagueness allows the police to effectuate the detention in an unreasonable manner which he argues occurred in this case. We disagree.

The statute contains specific procedures for detaining an individual. The detention is pursuant to an order obtained from a neutral magistrate. A.R.S. § 13–3905(A). The order of detention must specify the place for obtaining the evidence (A.R.S.

§ 13–3905(B)(6)). It must also specify the time of taking the evidence with the proviso that the detention not exceed three hours (A.R.S. § 13–3905(B)(7)), and the order must be executed with fifteen days (A.R.S. § 13–3905(B)(8)). Our supreme court has held that A.R.S. § 13–3905 is not unconstitutional "due to a lack of procedural safeguards." *Via,* 146 Ariz. at 113, 704 P.2d at 243. As stated in that case:

> The good, therefore, that the fourth amendment was designed to promote, protection of the citizen from arbitrary intrusions into his personal security by law enforcement officials, *see Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 332 [54 L.Ed.2d 331] (1977), is not offended by the statute.

*Id. See also State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977) (if order obtained pursuant to statutory safeguards implicit in statute, it has operated fully to protect the defendant).

We thus reject the defendant's argument that to satisfy fourth amendment requirements, the statute must direct the magistrate to specify not only the time and place of taking the evidence, but also the precise manner of detaining the identified person. Such a requirement would severely impede law enforcement's ability to decide on a case-by-case basis the most efficacious method to obtain the presence of an individual to gather the evidence. Indeed, in this case, the police thought it wise to delay the detention of the defendant until he left his home in order to avoid the possibility of otherwise creating a situation dangerous to the defendant's family and neighborhood. The failure of the statute to provide for an exact manner of detention does not render it unconstitutional.

### LACK OF SPECIFICITY IN THE ORDER AS TO TIME OF DETENTION

■ The defendant argues that the statute was unconstitutionally applied to him because the order for obtaining identifying physical evidence failed to specify a specific time of taking the evidence as required by the statute, but rather stated that it was

to be obtained "as soon as reasonably practical following the issuance of this order." Relying on *Long v. Garrett*, 22 Ariz.App. 397, 527 P.2d 1240 (1974), he also argues somewhat inconsistently that the order should permit the identified person to appear at his convenience during the fifteen-day period that the order remains in effect. He concludes that the order in this case was fatally defective and failed to comply with the statute.

 In our opinion, defendant has misinterpreted the requirements of the statute. In construing a statute, the primary principle is to determine and give effect to legislative intent. *State v. Altamirano*, 166 Ariz. 432, 435, 803 P.2d 425, 428 (App. 1990). To find legislative intent, the court must consider the content of the statute, the language used, its subject matter, historical background, the effects and consequences and the spirit and purpose of the law. *Id., quoting Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1044 (1988). Statutory provisions should be read together to give harmonious effect to all sections. *State v. Standsberry*, 114 Ariz. 351, 353, 560 P.2d 1258, 1260 (App.1976).

The provisions of the statute pertinent to this issue are found in subsections A and B(7) and B(8). Subsection A provides:

> The order shall require the presence of the ... individual at such time ... as the court shall direct....

Subsections B(7) and B(8) are as follows:

> B. Any order issued pursuant to the provisions of this section shall specify the following:
>
> ....
>
> 7. The time that such evidence shall be taken except that no person may be detained for a period of more than three hours for the purpose of taking evidence.
> 8. The period of time, not exceeding fifteen days, during which the order shall continue in force and effect. If the order is not executed within fifteen days, a new order may be issued, pursuant to the provisions of this section.

We first note that the statute does not expressly require that the order designate a "specific" or "exact" time for the taking of the physical evidence. In fact, when subsections B(7) and B(8) are considered together, the implication of such an intent is negated. In our opinion, these subsections contemplate that a court will designate a place for the taking of the physical evidence and then set forth a time as specific as appears practical under the particular circumstances involved. Of course, the detention itself must be limited and must be effectuated within fifteen days. However, giving to an individual advance notice of a specific time to appear could provide an opportunity for the individual to evade detention, thereby seriously impeding law enforcement efforts to make effective use of the statute. Indeed, if the court was required to specify an exact time to appear, there would be no need to permit the order to continue in effect for fifteen days. Conversely, if the court could only direct the detention of a person at his convenience during the fifteen-day period, the requirement of specifying the time that such evidence shall be taken would be superfluous.

In our opinion, the legislature intended that the court have some flexibility in setting the time for detaining the identified person, subject to the statute's specific restrictions. Here, the order met the statutory requirements because it specified a time for the temporary detention of the defendant, reasonably fixed based upon the existing circumstances, and contained the required statutory limitations on the length of detention and the duration of the order. The order was not defective and the defendant's constitutional rights were not violated on this basis.

## DEFENDANT'S CONTENTIONS CONCERNING THE MANNER IN WHICH DETENTION WAS EFFECTUATED

 Defendant's argument that he was unconstitutionally detained under A.R.S. § 13-3905 is based on the false premise that there was no probable cause to support his forcible detention. Accordingly, we need not discuss that argument. Here, the record shows that there were circum-

stances justifying an immediate detention of the defendant for the taking of the designated physical evidence rather than permitting him to appear at his convenience within the fifteen day period. While under the statute, an order could be entered that allows an individual to appear at his convenience, the statute also clearly contemplates a non-voluntary situation where "detention" is necessary. The statute's repeated use of the words "detained" and "detention" makes this intention evident.

Under the circumstances of this case, the detention of the defendant was reasonable and did not violate his fourth amendment rights.

## PROTECTIONS UNDER THE ARIZONA CONSTITUTION

### A. Article 2, Section 8.

 The defendant argues that art. 2, § 8 of the Arizona Constitution provides greater protection than the fourth amendment to the United States Constitution regarding permissible detentions to obtain physical evidence.[2] We initially note that the Arizona Supreme Court has, in limited instances, found more protection in the Arizona Constitution, art. 2, § 8, than its federal counterpart because of textual differences. *See State v. Bolt*, 142 Ariz. 260, 689 P.2d 519 (1984); *State v. Ault*, 150 Ariz. 459, 724 P.2d 545 (1986); *State v. Martin*, 139 Ariz. 466, 679 P.2d 489 (1984). All of these cases focus on the warrantless entry into the home because the Arizona Constitution explicitly gives greater protection to the sanctity of the home.

We find nothing in the language of article 2, § 8 that suggests that the Arizona Constitution would not permit detentions to obtain physical evidence upon a showing of probable cause, and the defendant has cited no authority that suggests such a result. We therefore reject defendant's argument on this issue.

### B. Article 2, Section 10.

 The defendant also contends that art. 2, § 10 of the Arizona Constitution provides greater protection to a criminal defendant than does the fifth amendment to the United States Constitution regarding the taking of physical evidence.[3] The defendant does not argue that taking of physical evidence pursuant to A.R.S. § 13–3905 violates the fifth amendment. In fact, cases are to the contrary, finding that such evidence is nontestimonial in nature. *See Schmerber v. California, supra* (no fifth amendment violation to take blood); *Campbell v. Superior Court in and for the County of Maricopa*, 106 Ariz. 542, 479 P.2d 685 (1971) (no fifth amendment violation to take blood, breath or urine); *State v. White*, 102 Ariz. 162, 426 P.2d 796 (1967) (no fifth amendment violation to take fingerprints); *State v. Armstrong*, 189 Mont. 407, 616 P.2d 341 (1980) (no fifth amendment violation to take pubic hairs).

Our supreme court has specifically held that art. 2, § 10 of the Arizona Constitution does not afford an accused more protection than does the fifth amendment to the United States Constitution despite the variations in wording. *White*, 102 Ariz. at 163, 426 P.2d at 797; *see also State v. Fendler*, 127 Ariz. 464, 481, 622 P.2d 23, 40 (App. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).[4] Thus, we reject the defendant's argument that the detention violates art. 2, § 10 of the Arizona Constitution.

---

2. The fourth amendment protects against "unreasonable searches and seizures." Art. 2, § 8 provides that "no person shall be disturbed in his private affairs or his home invaded, without authority of law."

3. The fifth amendment provides that "No person ... shall be compelled in any criminal case to be a witness against himself...." Art. 2, § 10 provides that "No person shall be compelled in any criminal case to give evidence against himself."

4. In support of his position, the defendant relies on a law review article co-authored by Justice Stanley G. Feldman, *Double Security of Federalism: Protecting Individual Liberty in the Constitution*, 20 Ariz.St.L.J. 115 (1988). However, Justice Feldman specifically notes, albeit with some criticism, that the Arizona courts have equated the state constitutional self-incrimination clause with the fifth amendment. *Id.* at 126.

## CONSECUTIVE SENTENCES ON COUNTS SIX AND SEVEN

At sentencing, the court first orally pronounced sentence on counts one through seven and stated that those sentences were to run concurrently with each other. A few moments later, the court stated that "with respect to counts six and seven, it is ordered that those sentences 21 years and 15 years respectively, shall run consecutively to counts one through five." After the judge finished his oral pronouncement of the sentences, but during the same sentencing hearing, defense counsel requested clarification with regard to the sentences on counts six and seven because of the inconsistency in the oral pronouncement. The court clarified the inconsistency by stating that count six was to run consecutively to counts one through five, and count seven was to be consecutive to count six.

The defendant argues that under Rule 26.16, Arizona Rules of Criminal Procedure, the court lacked the authority to make the sentences consecutive after first stating that they were to run concurrently to counts one through five. The defendant also argues that imposition of the consecutive sentences violated the defendant's constitutional guarantee against double punishment provided by the fifth amendment to the United States Constitution. These contentions have no merit.

This case presents facts similar to those in *State v. Rendel*, 18 Ariz.App. 201, 501 P.2d 42 (1972). There the court imposed sentence on the defendant, and counsel asked for clarification about the sentence. The court on reflection said that it had incorrectly pronounced the sentenced and orally pronounced a different sentence. This court noted that the trial court had the power to correct obvious errors in sentencing until its jurisdiction was lost by appeal. *See also State v. Glasscock*, 168 Ariz. 265, 812 P.2d 1083 (App.1991).

Further, we find that the correction of the sentences at the sentencing hearing did not violate the double jeopardy clause of the United States Constitution. In *Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), the Supreme Court held that correction of a sentence imposed because of an inadvertent error by the judge five hours later did not offend the double jeopardy clause. The Court specifically noted that the constitution does not "require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Id.*, 330 U.S. at 166–67, 67 S.Ct. at 649, 91 L.Ed. at 822. *See also Merry v. State*, 752 P.2d 472 (Alaska App.1988) (court's imposition of consecutive sentence ten minutes after mistakenly imposing concurrent sentence did not violate double jeopardy); *State v. Wirtala*, 231 Mont. 264, 752 P.2d 177 (1988) (amended sentence imposed nine days after original sentence orally pronounced but not reduced to writing, signed by the judge and filed with the court did not violate double jeopardy).

The cases cited by the defendant are inapposite because they stand for the proposition that when an oral pronouncement and written judgment differ, the oral pronouncement will generally control. However, here the court made an incorrect oral pronouncement and had the power to immediately correct the original oral pronouncement to conform to its intent. The consecutive sentences on counts six and seven were properly imposed.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none.

The convictions and sentences are affirmed.

EHRLICH, P.J., and VOSS, J., concur.

Note: Retired Judge LEVI RAY HAIRE was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.